THE MANCHESTER PAPER COMPANY, Appellant, *v.* JACOB R. MOORE, as Administrator, etc., Respondent.

*Court of Appeals, March* 1, 1887.

1. *Account stated.*—Accounts rendered monthly for four years, and after examination retained without objection, constitute accounts stated, and can only be opened and investigated upon proof of fraud or mistake.

2. *Evidence. Ambiguous terms.*—The words "ruling market rates" used in a written contract, where there were two market rates, one for the goods as bought of importers, and another for same goods as sold by jobbers, may be explained by the conversations of the parties, the surrounding circumstances, the characteristics of the business conducted by each, and their relative needs and modes of action.

Appeal from a judgment of the general term of the New York Superior Court, affirming a judgment entered on the report of a referee, dismissing the complaint upon the merits

*Henry L. Burnett*, for appellant.

*M. W. Divine*, for respondent.

FINCH, J.—The accounts rendered monthly during four years by Jessup and Moore to the plaintiff, and after examination retained without objection, constituted accounts stated and could only be opened and investigated upon proof of fraud or mistake. The plaintiff evidently recognized this feature of the situation, for the complaint expressly charges fraud or mistake in the rendition of the accounts, and the denial of the defendant put that issue into the case. The items assailed as thus fraudulent or mistaken were the chemicals furnished at the prices charged, and the computations of interest. The contract between

the parties was embodied in a letter written by the defendant referring to previous conversations and purporting to frame their meaning into the terms of a written agreement.    Among those terms it was specified that the supplies for the plaintiff's paper mill were to be furnished by the defendants at the " ruling market rates."    The evidence discloses that the market rates for chemicals bought of importers was a fraction below the market rates for the same goods as sold by jobbers among the other supplies necessary to the manufacture of paper.

The fact thus disclosed raised a latent ambiguity in the language of the written contract, and opened the inquiry which of the two market rates was meant or intended by the terms of the contract.    The previous conversation of the parties tending to show in what sense the subsequent words as written were understood, and bearing upon the issue of fraud between the parties only to be investigated by a complete survey of all that occurred relating to the transaction were admissible in evidence.    When these conversations were first offered the defendant objected upon the ground that the terms of the writing could not be varied or contradicted by parol proof.    The court expressly declined to receive the evidence for any such purpose.    The defendant conceded by the form of his objection, in which he insisted that the question asked "should be confided to the explanation of some phrase in the written contract" that so much of the conversation as tended to such an explanation was admissible.    The evidence thereafter given did not transgress this limitation.    It exposed the situation of the parties, the surrounding circumstances, the characteristics of the business conducted by each, their relative needs and modes of action, thus enabling the court to read the instrument from the standpoint of the parties themselves. The conversation developed that by ruling market rates the parties meant and intended the jobbers' rates as established by those who, like the defendants, were engaged in

24

furnishing paper makers' supplies generally and of all kinds, and not the importers' rates for chemicals alone, and showed, further, that the defendants in charging jobbers' rates were guilty of no fraud but conforming to an understood and expressed intention. We think, therefore, that no error was committed in admitting the evidence objected to, nor in holding that the rates charged were in conformity to the terms of the contract, and not fraudulent or mistaken. In Dent *v.* N. A. Steamship Co., 49 N. Y. 390, the offer rejected was to show the prior parol agreement of the parties. The effort was to substitute the verbal language for the written language of the contract, which of course was inadmissible. Facts existing, it was said, might be shown in aid of interpreting the written words, but not different language as constituting the agreement. In the present case the accounts stated conclusively interpreted the instrument, unless they were fraudulent or mistaken, and upon that issue all that was said and done leading up to the written contract and tending to establish the absence of fraud in the charges made, was certainly admissible.

The same thing is true as to the manner of computing interest. It is proved that the defendants showed and carefully explained to the superintendent of plaintiff their interest computations with their own mill and their mode of charging the same as an illustration of the manner in which they proposed to conduct the business, to which the superintendent assented. Three computations appeared upon fifty-four different accounts running through the entire business relation of the parties, and the finding of the referee that such accounts were neither fraudulent nor mistaken leaves them binding upon the parties. The judgment should be affirmed, with costs.

All concur.